UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


MELISSA ANN AMARAL,                        :
                        Plaintiff,         :
                                           :
V.                                         :          C.A. No.: 14-57S
                                           :
                                           :
CRANSTON  HOUSING AUTHORITY;               :
And                                        :
Z. ELAINE WOLOOHOJIAN, in her              :
official capacity as Executive Director of :
the Cranston Housing Authority            :
                        Defendants.        :


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTIVE RELIEF**


Plaintiff, Melissa Ann Amaral moves, pursuant to Rule 65 of the Federal Rules of Civil

Procedure, for a preliminary injunction enjoining the Defendants to restore the Plaintiff's Section

8 Housing Choice Voucher and pay the Plaintiff's landlord, Manuel Martins (hereinafter

"Martins"), all sums due (both past and future) under the Housing Assistance Payments Contract

between Defendant Cranston Housing Authority (hereinafter "CHA"), and Martins, and accept a

payment from the Department of Children, Youth and Families (hereinafter "DCYF"),to clear

the balance owed by the Plaintiff under a Repayment Agreement with CHA until further order of

the Court.[1]  As explained below, the Defendants terminated the Plaintiff's Section 8 Housing

Choice Voucher without affording her both proper notice and a pre-termination hearing, in

violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and

regulations promulgated by the U.S. Department of Housing and Urban Development

---

[1] Plaintiff's Motion for Preliminary Injunction is based on Counts 1 and 2 of Plaintiff's Verified Complaint.

(hereinafter "HUD") requiring a pre-termination hearing.  In support of her Motion, the Plaintiff

relies on the Verified Complaint (hereinafter "VC"), the attached exhibits and declarations, and

the grounds set forth in this Memorandum of Law.

## BACKGROUND

The Section 8 program was established by the Housing and Community Development

Act of 1974, 42 U.S.C. §1437f.  Under the Section 8 program, qualifying lower income families

and individuals receive a rental subsidy from HUD that is paid directly to the landlord.  42

U.S.C. §1437f(o).  One component of the Section 8 program is the Section 8 Housing Choice

Voucher Program (hereafter, "HCVP"), which is administered by local Public Housing

Authorities (hereinafter "PHA"), established under state law and designated by HUD to

administer the program in a particular geographic area.  42 U.S.C. §1437f(o)(1)(A); R.I.G.L. §

45-25-1 *et. seq.*  In administering the HCVP, PHA's must act in accordance with HUD

regulations and directives.  See 42 U.S.C. §1437f.  Under the HCVP, the voucher holder pays

30% of the household's adjusted income for rent and utilities, and with funds from HUD, the

PHA pays the remainder of the rent to the landlord on the voucher holder's behalf, subject to the

maximum rent limitations proscribed by HUD.  42 U.S.C. §1437f(o)(2)(A).

Plaintiff is a single unemployed mother of three minor children who, since 2006, has

been a participant in CHA's HCVP.  VC, at ¶¶ 2, 8.  Since October of 2006, the Defendants

administered the Plaintiff's Section 8 Voucher.[2]  Id., at ¶ 8.  On or about June 12, 2008, the

Defendants sent the Plaintiff a letter informing her of their preliminary determination that, due to

Plaintiff's failure to comply with regulations of the Section 8 Program, the Plaintiff was no

longer eligible to receive Section 8 benefits.  Id., at ¶ 10.  Specifically, the Defendants notice

---

[2] In this memorandum of law the terms "Section 8 Voucher" and "Section 8 benefits" are used interchangeably and have the same meaning.

alleges that the Plaintiff had failed to report her son's Supplemental Security Income as part of her household's income.  Id.  The Defendants' June 12, 2008 letter stated that the Plaintiff could request an informal review to object to the preliminary determination of ineligibility within ten days of the date of said letter.  Id.

The Plaintiff requested an informal hearing on the matter which was held on July 31, 2008.  Id., at ¶ 11.  After the hearing, the informal hearing officer issued a written decision on the same date of the hearing, which allowed the Plaintiff to retain her Section 8 benefits.  Id., at ¶ 12. As a condition of retaining her Section 8 benefits, the hearing officer required the Plaintiff to pay the Defendants an undisclosed amount through a Repayment Agreement.[3]  VC, Exhibit 2 at ¶ 2. To retain her Section 8 benefits the Plaintiff signed a Repayment Agreement on or about August 25, 2008.  VC, at ¶ 15.  The Repayment Agreement required the Plaintiff to repay the sum of $4,916.56 in installments of $100.00 per month plus a lump sum payment due after receipt of her income tax refund in the "Spring of 2008."  Id., at ¶ 16.  This agreement further provided that failure to comply with its terms would result in termination of the Plaintiff's Section 8 benefits. VC, Exhibit 5 at ¶ 4.

Although under the Repayment Agreement the Plaintiff's first payment did not come due until October 1, 2008, in September 2008, the Plaintiff made her first payment to the Defendants. VC, at ¶ 17.  Thereafter, the Plaintiff made steady payments to the Defendants, often several times in a single month, but did not make the large lump sum payment as the Repayment Agreement had contemplated.  See VC, Exhibit 6.

In year two of the repayment agreement the Plaintiff became unemployed. VC, at ¶ 18. From December 2010 through March 2012, the Plaintiff collected Unemployment Insurance

---

[3] As part of her decision, however, the hearing officer did not make a factual determination as to the amount that the Plaintiff was required to reimburse the Defendants.

Benefits (hereinafter "Unemployment"), in the amount of $289.00 per week. Id., at ¶¶ 21, 22.

Due to her unemployment and ensuing loss of income, in 2011 the Plaintiff made payments of

less than the $100.00 a month towards the balance owed under the Repayment Agreement for six

of the twelve months. Id., at ¶¶ 23, 24. In March 2012, the Plaintiff became employed part time

and her net take-home pay was approximately $182.00 per week. Id., at ¶¶ 26, 28. Although she

had secured employment, her meager earnings were not sufficient to sustain the $100.00 monthly

payments. Consequently, during the year 2012, Plaintiff paid a total of $270.00 to CHA under

the Repayment Agreement. Id., at ¶ 29.

In year four of the Repayment Agreement, on or about November 19, 2012, the

Defendants mailed the Plaintiff a letter in which they averred the Plaintiff had not made a

payment in three months and had "defaulted numerous times on this account over the past few

years." VC, Exhibit 7 at ¶ 1. Moreover, said letter from the Defendants informed the Plaintiff

that CHA had made a final determination that the Plaintiff was "no longer eligible to receive

Section 8 benefits" and that her Section 8 benefits were "terminated immediately." Id. at ¶ 2.

Unlike the June 12, 2008 letter, the November 19, 2012 did not state that the Plaintiff could

object to the termination of her Section 8 benefits nor did it inform her of the right to an informal

hearing. See Id. As of November 19, 2012, the Plaintiff had paid a total of $3,900.00 leaving a

balance of $1,016.56 from the original amount owed under the Repayment Agreement. VC, at ¶

31.

One of the Plaintiff's children is in the legal custody of the DCYF. Id. at ¶ 35.

Therefore, the Rhode Island Family Court (hereinafter "Family Court") appointed Candace

Saugy (hereinafter "Saugy"), a social worker from the Office of Court Appointed Special

Advocate (hereinafter "CASA") to provide assistance to the Plaintiff. Id., at ¶ 37. Concerned

that the Plaintiff's family might lose their present housing, Saugy interceded on the Plaintiff's

behalf.  Id., at ¶¶ 39, 42, 43.  In December 2012, to preserve the Plaintiff's stable home, the

Family Court ordered DCYF to pay an amount not exceeding $1016.00 to the Defendants to

reinstate the Plaintiff's Section 8 benefits.  Id., at ¶ 40.  Despite the Court's Order, the

Defendants refused to accept the court-ordered payment from DCYF, but the Plaintiff retained

her Section 8 benefits.  Id., at ¶¶ 44, 46.

In January 2013, the Plaintiff resumed making payments to the Defendants.  Id., at ¶ 47.

Towards the end of March 2013, the Plaintiff once again became unemployed.  Id., at ¶ 48.

When the Plaintiff notified the Defendants of this change in her employment status, the

Defendants reduced the tenant portion of her rent.  Id., at ¶¶ 50, 51.  However, despite being

made aware that the Plaintiff's income was reduced, on August 6, 2013, the Defendants again

notified the Plaintiff that her Section 8 benefits were "being terminated immediately" for her

failure to make payments under the Repayment Agreement for "two months."  VC, Exhibit 13 at

¶¶ 1, 2.  The wording of the August 6, 2013 letter was nearly identical to the November 19, 2012

letter, without any language that apprised the Plaintiff of her right to object to the termination

and her right to an informal hearing.  Compare VC, Exhibit 7, and VC, Exhibit 13.  As of August

6, 2013, the Plaintiff had paid the Defendants $4,500.00 out of the $4,916.56 owed under the

Repayment Agreement, leaving an unpaid balance of $416.56 which comprised less than 10% of

the original amount owed under the Repayment Agreement.  See VC, Exhibit 6 at 4.

On August 23, 2013, Family Court Judge Francis J. Murry, Jr., based upon the Plaintiff's

minor child's need for stable housing and to prevent his removal from the family home, signed

an Order requiring the DCYF to pay the Defendants an amount up to $1016.00 to reinstate the

Plaintiff's Section 8 benefits.[4]  VC, at ¶ 61.  Thereafter, the Plaintiff's newly assigned CASA

worker Nicole Placella (hereinafter "Placella"), called the Defendants and advised them that the

Family Court had entered an Order requiring DCYF to pay the Defendants the money that the

Plaintiff allegedly owed under the Repayment Agreement.  Id., at ¶ 62.  The Defendants refused

to accept payment from DCYF.  Id., at ¶ 63.  Thereafter, the Plaintiff unsuccessfully attempted to

discuss the termination of her Section 8 benefits with the Defendants.  Id. at ¶¶ 64-67.  The

Defendants' final rental subsidy payment to the Plaintiff's landlord Martins was made in the

month of August, 2013.  Id., at ¶ 68.

On October 25, 2013, the Plaintiff, through Counsel, sent, via first class mail, a request

for executive review to Defendant CHA's Executive Director, Defendant Z. Elaine Woloohojian

(hereinafter "Woloohojian").  Id. at ¶ 69.  In so doing, the Plaintiff requested that Defendant

Woloohojian reconsider and overturn the termination of the Plaintiff's Section 8 benefits.  Id.  In

support for her request for reconsideration, Plaintiff asserted that her Constitutional right to Due

Process was violated when she was not provided with proper notice and with the opportunity to

be heard on the issue regarding her protected property rights; and also alleged that the CHA had

not followed applicable federal regulations promulgated by HUD regarding the termination of

Section 8 benefits.  Id., at ¶ 70.  The Plaintiff provided Defendant Woloohojian with ten days to

respond prior to filing this action.  Id., at ¶ 71.  Although Defendant Woloohojian did not provide

the Plaintiff with a written denial, her representative, via telephone, informed the Plaintiff that

Defendant Woloohojian would not reconsider its decision and would not reinstate the Plaintiff's

Section 8 benefits.  Id., at ¶ 72.

---

[4] To protect the confidentiality of the Plaintiff's minor child, his name is redacted from the Family Court's Order.
An unredacted copy of the Court Order will be made available to the Court for in camera review.

**PRELIMINARY INJUNCTION STANDARD**

A preliminary injunction authorized by Fed. R. Civ. P. 65 "is traditionally viewed as

relief of an extraordinary nature and does not purport to be a disposition of the matter on its

merits." Francisco Sanchez v. Esso Standard Oil Co., 572 F.3d 1, 14 (1st Cir. 2009).  However,

"trial courts have wide discretion in making judgments regarding the appropriateness of such

relief."  Id.  In exercising their discretion "whether to grant a preliminary injunction, the district

court must consider the following factors: first, the likelihood that the party requesting the

injunction will succeed on the merits; second, the potential for irreparable harm if the injunction

is denied; third, the hardship to the nonmovant if enjoined compared to the hardship to the

movant if injunctive relief is denied; and fourth, the effect of the court's ruling on the public

interest."  Id.

**ARGUMENT**

### I.     The Plaintiff has a Reasonable Likelihood of Success on the Merits

Plaintiff challenges the actions of the Defendants on the grounds that the Defendants'

termination of her Section 8 benefits is unlawful and violates the Plaintiff's Due Process rights

and HUD regulations.  When a Plaintiff demonstrates that there are a "number of procedural and

substantive deficiencies in the termination of her Section 8 benefits," the Plaintiff has

demonstrated a likelihood of success on the merits that warrants the issuance of a preliminary

injunction.  Young v. Maryville Hous. Auth., 2009 U.S. Dist. LEXIS 56539, at *13 (E.D. Tenn.

July 2, 2009).

#### A.  Due Process Violations

The Due Process Clause of the Fourteenth Amendment prohibits the states from

depriving any person of "life, liberty, or property" without "due process of law."  U.S. CONST.

amend. XIV, § 1.  When governmental decisions deprive individuals of their "liberty" or

"property" interests as delineated by the Due Process Clause of the Fourteenth Amendment,

procedural due process both limits and defines the actions the government can take.  Mathews v.

Eldridge, 424 U.S. 319, 332 (1976).  While, "due process is flexible, and calls for such

procedural protections as the particular situation demands," Morrissey v. Brewer, 408 U.S. 471,

481 (1972), it is well established that prior to completely depriving an individual of their vested

property interest, the individual is entitled to "notice and opportunity for hearing appropriate to

the nature of the case."  Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982) (citing

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).

The U.S. Supreme Court has repeatedly held that the level of process due is directly

proportional to the extent that an individual may be "condemned to suffer grievous loss."

Goldberg v. Kelly, 397 U.S. 254, 262-63 (1970) (citing Joint Anti-Fascist Refugee Comm. v.

McGrath, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring)).  "To put it as plainly as

possible, the State may not finally destroy a property interest without first giving the putative

owner an opportunity to present his claim of entitlement."  Logan, supra, 455 U.S. at 434 (citing

Bell v. Burson, 402 U.S. 535, 542 (1971)).  To determine the level of process due, the Court

considers three distinct factors: the private interest that is implicated, the risk of erroneous

deprivation and value of any additional procedural safeguards, and the additional fiscal and

administrative burden incurred by the Government because of any additional procedural

requirements.  Mathews, supra, 424 U.S. at 335.  When the private interest implicated is the

termination of benefits that may deprive a recipient of their means of survival, application of the

three factors dictates that the level of process due requires a governmental agency provide a

recipient a pre-termination hearing that closely resembles a judicial trial.  Id., at 333.

Subsequent to the Supreme Court's rulings in *Goldberg* and *Mathews*, federal courts across the nation have repeatedly ruled that Section 8 benefits are a property interest protected by the Due Process Clause, and that said clause requires a hearing be held before a state actor such as a PHA can terminate those benefits.  Robinson v. District of Columbia Hous. Auth., 660 F. Supp. 2d 6, 20 (D.D.C. 2009) (applying due process requirements imposed by the Supreme Court in *Goldberg v. Kelly* for welfare benefit terminations to the termination of Section 8 benefits); Baldwin v. Hous. Auth. of City of Camden, 278 F. Supp. 2d 365, 380 (D.N.J. 2003) (Section 8 benefits, like other welfare benefits, are a property interest protected by the Fifth and Fourteenth amendments to the U.S. Constitution); Simmons v. Drew, 716 F.2d 1160, 1162, 1164 (7th Cir. 1983) (analogizing Section 8 benefits to job tenure of a public school teacher and holding that due process requires a hearing before Section 8 benefits are terminated); Ferguson v. Metro. Dev. and Hous. Agency, 485 F.Supp. 517, 521, 527 (M.D.Tenn. 1980) (termination of a participant's Section 8 benefits "constitutes state action within the meaning of the Fourteenth Amendment" and after applying *Goldberg* and *Mathews's* balancing tests held that a pre-termination hearing is required before Section 8 benefits can be terminated); Brezina v. Dowdall, 472 F. Supp. 82, 85 (N.D. Ill. 1979) (Due Process and the HUD regulations require that a PHA provide a recipient notice and hearing prior to terminating benefits).

Having established that the Due Process Clause requires a pre-termination hearing before Section 8 benefits can be terminated, *Goldberg v. Kelly* mandates the following procedural due process protections for recipients of government benefits such as Section 8 voucher holders when those benefits are terminated by a state actor:

1.   a timely and adequate notice detailing the reasons for the proposed termination;

2. the opportunity to defend themselves by confronting any adverse witnesses and by

   presenting their own arguments and evidence orally;

3. the right to be represented by counsel;

4. a decision as to a recipient's eligibility based solely on the legal rules and evidence

   adduced at the hearing;

5. a written decision stating the reasons for the decision and indicating the evidence

   relied upon;

6. and an impartial informal hearing officer.

Goldberg, supra, 397 U.S. at 267-68, 270-71.  See, also, Section 8 Certificate Program, Moderate

Rehabilitation Program and Housing Voucher Program, 55 Fed. Reg. 28,538 (July 11, 1990),

where HUD explicitly states that a PHA must provide a Section 8 recipient a pretermination

hearing that complies with *Goldberg v. Kelly:*

> Under this rule, PHAs must adopt written informal pretermination hearing
> procedures for participants, which fully meet the requirements of *Goldberg* v. *Kelly*. The
> family must be given prompt notice of the decision to deny assistance, which must briefly
> state the reasons for the decision and the time during which a participant family may
> request an informal hearing. The hearing must be conducted by a person other than the
> person (or a subordinate of the person) who made the decision under review. The
> participant has a right to be represented by counsel, must be given the opportunity to
> present evidence and to question any witnesses. The person conducting the hearing must
> issue a written decision, stating briefly the reasons for the decision. Factual
> determinations relating to the individual circumstances of the participant must be based
> on the evidence presented at the hearing. Finally, a copy of the hearing decision must be
> furnished promptly to the participant.

55 Fed. Reg. 28538, 28,541 (July 11, 1990).

In the instant matter, the Defendants terminated the Plaintiff's Section 8 benefits without

providing her either proper notice or an opportunity to be heard.  Instead, the Defendants merely

mailed the Plaintiff a letter informing her that the Defendants were terminating her Section 8

benefits immediately.  Because the Defendants did not provide the Plaintiff with either proper

notice of their intent to terminate the Plaintiff's Section 8 benefits or an evidentiary hearing prior

to terminating her Section 8 Voucher, the Defendants did not comply with any of the procedural

due process requirements set forth in *Goldberg*.  Therefore, the Plaintiff is likely to succeed on

the merits of her due process claim.

### B.  HUD Regulations

Under the federal regulations promulgated by HUD, when terminating Section 8 benefits

a PHA must provide a recipient of those benefits an informal pre-termination hearing.  Pursuant

to 24 C.F.R. §982.555(a) there are six circumstances when a housing authority *must* provide a

Section 8 participant with an informal hearing.  One of those circumstances is when a PHA

makes "[a] determination to terminate assistance for a participant family because of the family's

action or failure to act (see §982.552 )."  24 C.F.R. §982.555(a)(1)(v).  Section 982.552 sets forth

the basis for denial or termination of assistance for families, and in relevant part states, that

"[t]he [CHA] may . . . terminate program assistance for a participant, for any of the following

grounds: If the family currently owes rent or other amounts to the [CHA] or to another PHA in

connection with Section 8 or public housing assistance under the 1937 Act."  24. C.F.R.

§982.552(c)(1)(v).  HUD regulations clearly set forth that when the proposed termination of

Section 8 benefits is based upon a family owing rent or other amounts to a PHA, as is the case in

the instant matter, the PHA must provide the participant the opportunity to defend against the

allegations of the PHA during an informal hearing.

Therefore, because the Defendants intended to terminate the Plaintiff's Section 8 benefits

based upon allegations that she owed monies to CHA, HUD regulations require the Defendants

to provide the Plaintiff with a pre-termination hearing.  In the instant matter, the Defendants'

termination of the Plaintiff's Section 8 benefits failed to comply with HUD regulations because

the Defendants terminated the Plaintiff's Section 8 benefits without providing her with a pre-termination hearing.  Consequently, the Defendants failed to comply with HUD regulations and the Plaintiff is likely to succeed on the merits of her claim based upon those regulations.  Basham v. Freda, 805 F. Supp. 930, 932 (M.D.Fla.1992), aff'd, 985 F.2d 579 (11th Cir.1993) (Failure to comply with HUD regulations and due process requirements is a condition precedent for the likelihood of success on the merits.)

## II.    Irreparable Harm

Several courts have held that the termination of Section 8 benefits constitutes irreparable harm.  In *Carter v. Montgomery Hous. Auth.*, the Court found that the termination of Section 8 benefits constituted irreparable harm as a recipient of Section 8 benefits cannot "afford to pay [their] full rent [and w]ithout Section 8 benefits, they will all have to leave their current homes." Carter v. Montgomery Hous. Auth., 2009 U.S. Dist. LEXIS 102352, at *5 (M.D. Ala. Nov. 3, 2009).  Similarly, in *Aguirre v. Aurora Hous. Auth.*, the Court granted a preliminary injunction reinstating Section 8 benefits to a terminated recipient where the PHA failed to issue a written decision on the outcome of an informal hearing, observing "that plaintiff has no adequate remedy at law for [the PHA's] failure to comply with the regulations and that she would be irreparably harmed if [the PHA was] not required to reinstate her participation in the [HCVP]."  Aguirre v. Aurora Hous. Auth., 1992 U.S. Dist. LEXIS 65, at *16 (N.D. Ill. Jan. 2, 1992).  See also McNeill v. New York City Hous. Auth., 719 F. Supp. 233, 254 (S.D.N.Y.1989) ("The threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury, and satisfies the [second] prong of the test for preliminary injunctive relief.").  In *McNeill*, the Court enjoined private landlords from evicting Section 8 tenants where the PHA stopped making subsidy payments due to landlords' failure to make repairs to apartments.  Id., at 257.

Here, too, the Plaintiff will suffer irreparable harm if her Section 8 benefits are not restored through a preliminary injunction.  The Plaintiff is a low-income individual and her current monthly income is comprised of her Unemployment and her son's Supplemental Security Income benefits totaling $1248.92.  VC, at ¶ 76.  The market rent for her apartment is $1000.00 per month, an amount that exceeds her ability to pay without her Section 8 benefits.  Id., at ¶ 77.  Because the Defendants stopped paying the Plaintiff's rental subsidy as of September 1, 2013, the Plaintiff cannot afford the full rent for her apartment and she and her children will become homeless if her assistance is not restored.  Id., at ¶¶ 78, 79.

### III.     Balance of the Equities, Including Hardships to Each Party

If this Court grants the Plaintiff's request for injunctive relief, the Defendants will suffer little to no harm.  The Defendants administer Section 8 benefits for numerous households, and continuing to provide assistance for the Plaintiff while this matter is pending will not significantly affect its resources or HCVP.  On numerous occasions, courts have found that in the context of a preliminary injunction motion the balance of the equities favors the Section 8 participant over the PHA.  Young, supra, 2009 U.S. Dist. LEXIS 56539, at *30 (Budget shortfalls, Section 8 benefits waiting lists, limited Section 8 funds and even displacement or delay in serving others does not constitute substantial harm to a PHA.); Litsey v. Hous. Auth. of Bardstown, 1999 WL 33604017, at *7 (W.D. Ky. April 1, 1999) (Even if the PHA had to pay the rental subsidy out of its own funds, "this harm does not seem substantial."); Jackson v. Jacobs, 971 F. Supp. 560, 565 (N.D. Ga. 1997) (In granting a Section 8 recipients motion for preliminary injunction the Court concluded "[i]t would be difficult to argue that the modest amount of money and administrative inconvenience a preliminary injunction would cost the [PHA] outweighs the injury [the Plaintiff and her minor children] would suffer if [they] were compelled to [become]

homeless."). This Court should strike a similar balance between the hardship to the Plaintiff and the Defendants and issue the preliminary injunction requested herein.

## IV.    Public Interest

In Section 8 termination cases where courts have granted motions for preliminary injunction, the courts have found that protecting families from imminent eviction and homelessness serves the public interest. Young, supra, 2009 U.S. Dist. LEXIS 56539, at *31-32 ("[T]he public interest would be served by the issuance of the injunction because it would protect the Plaintiff and her two young children from imminent danger of eviction and homelessness."); Aguirre, supra, 1992 U.S. Dist. LEXIS 65, at *20 ("The public interest similarly would not favor a course of action resulting in the homelessness of plaintiff and her [three] children."). Moreover, it serves the public interest to guarantee that the Defendants properly administer their HCVP, and ensure that those in financial need are not terminated from the program in violation of their procedural due process rights and HUD regulations. Young, supra, 2009 U.S. Dist. LEXIS 56539, at * 32; ("[T]he enforcement of due process rights is in the public interest."); Basham, supra, 805 F. Supp. at 932 ("[T]here is a great public interest in guaranteeing that those in financial need are not unreasonably terminated from public assistance benefits."); accord Aguirre, supra, 1992 U.S. Dist. LEXIS 65, at *19.

In this case, the Plaintiff is under imminent threat of eviction. She is without the necessary funds to pay market rent or seek other housing. VC, at ¶¶ 77, 78. Without her Section 8 benefits, she and her children face the threat of becoming homeless. Id., at ¶ 79. Thus, the granting of the requested injunction will serve the public interest by preventing the Plaintiff and her family from becoming homeless. Additionally, the Defendants termination of the Plaintiff's Section 8 benefits without proper notice or the opportunity to be heard violated the Plaintiff's

Due Process Rights and HUD regulations.  Granting the requested injunction would send a

strong message that PHA's must properly administer the HCVP in accordance with the

Constitution and HUD regulations.  Therefore, the public interest is best served by immediately

reinstating the Plaintiff's Section 8 benefits.

   **WHEREFORE,** the Plaintiff respectfully requests this Court to enjoin the Defendants to

restore the Plaintiff's Section 8 Housing Choice Voucher and pay the Plaintiff's landlord,

Martins, all sums due (both past and future) under the Housing Assistance Payments Contract

between the Defendant CHA and Martins, and accept payment from the DCYF to clear the

remaining balance due under the Repayment Agreement, until further order of the Court.

           Melissa Ann Amaral
           By her Attorney,


           /s/ Eric Bither _____
           Eric Bither (#8910)
           Rhode Island Legal Services, Inc.
           56 Pine Street, Fourth Floor
           Providence, RI 02903
           (401) 274-2652 Ext. #141
           (401) 453-0310 (Fax)
           ebither@rils.org




           /s/ Steven Fischbach_____
           Steven Fischbach, #3259
           Rhode Island Legal Services, Inc.
           56 Pine Street, Fourth Floor
           Providence, RI 02903
           (401) 274-2652 Ext. 182
           (401) 453-0310 (Fax)
           sfischbach@rils.org

## CERTIFICATION OF SERVICE

   I hereby certify that a copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunctive Relief was served with the Summons and Verified Complaint on the following:

Cranston Housing Authority
Z. Elaine Woloohojian
Executive Director
50 Birch Street
Cranston, RI 02920

Z. Elaine Woloohojian
Executive Director
Cranston Housing Authority
50 Birch Street
Cranston, RI 02920

           /s/ Steven Fischbach_____

           /s/ Eric Bither_____

           February 10, 2014